935 A.2d 746

Mark ANDERSON, et al.

v.

GENERAL CASUALTY INSURANCE COMPANY f/k/a Southern Guaranty Insurance Company, et al.

No. 25, Sept. Term, 2007.

Court of Appeals of Maryland.

Nov. 14, 2007.

Peter Ayers Wimbrow, III, Ocean City, for petitioners.

Natalie Stroud Fenner (David A. Skomba, Franklin & Prokopik, Baltimore, on brief), for respondents.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER,(Retired, Specially Assigned), DALE R. CATHELL, (Retired, Specially Assigned), JJ.

GREENE, J.

This matter arises from an administrative complaint filed with the Maryland Insurance Administration as a result of Southern Guarantee Insurance Company's [1] cancellation of an insurance policy issued to Anderson's Exxon/JSM Enterprises Inc.[2] Southern Guarantee mailed the notice of cancellation to Anderson, addressed "care of" Ben Brown Insurance Agency, at the address listed on the declarations page of the policy.

After an investigation, the Maryland Insurance Administration determined that Southern Guaranty had properly notified Anderson's Exxon of the cancellation. On judicial review, the

---

1. Southern Guaranty Insurance Company is now known as General Casualty Insurance Company, but will hereinafter be referred to as "Southern Guaranty."

2. Anderson's Exxon/JSM Enterprises Inc., hereinafter, will be referred to as "Anderson's Exxon."

Circuit Court affirmed the decision, as did the Court of Special Appeals on appeal. We are now asked to decide whether notice mailed to the insured, "care of" a third party listed in the declarations page, constitutes proper notice sufficient to meet the statutory notice requirements. We shall hold that, because the terms of the insurance contract at issue provided a "mailing address" for the insured, written notice of intent to cancel the insurance policy mailed to that address complied with the statutory notice requirements for cancellation of the policy. Furthermore, because the insured consented to the designation of a third party as his agent to receive such notification or at least acquiesced in the designation, notice sent to that third party, consistent with the terms of the insurance contract, is proper notice. Accordingly, we shall affirm the judgment of the Court of Special Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

Mark W. Anderson is the owner of an Exxon gasoline and service station located in Ocean City, Maryland.[3] Throughout the 26 years Anderson has operated the business, he has used the services of Benjamin F. Brown Insurance Agency, Inc. ("Brown") to procure insurance for the gasoline and service station. When Anderson needed insurance coverage for automobile, towing, and road services, he contacted Brown. Because Brown could not directly procure insurance for these types of activities, Brown contacted Ashcraft & Associates Insurance Agency, Inc., which placed the insurance with Southern Guarantee Insurance Company. Southern Guarantee then issued Anderson's Exxon a Commercial Garage Liability Policy with renewal effective dates of June 1, 2002, to June 1, 2003. The declarations page of the policy listed the Named Insured and Mailing Address as:[4]

Anderson's Exxon/JSM Ent. Inc.

---

**3.** Because Anderson and Anderson's Exxon have the same interests, for purposes of this discussion they will be used interchangeably.

**4.** There is no evidence in the record to indicate who gave Southern Guaranty the address listed in the declarations page.

c/o Ben Brown Insurance Agency

304 Compton Avenue

Laurel, Maryland 20707–4330

Anderson received a copy of the policy from Brown, including the declarations page, via U.S. Mail. Anderson did not dispute the use of Brown's mailing address as his point of contact. Because the premiums for Anderson's policy were based on the size of his payroll, Southern Guaranty attempted to conduct a financial audit of Anderson's Exxon business, through Profitworks, an outside audit company. Compliance with the audit was a condition of the policy, and if Anderson failed to comply with the audit condition, Southern Guaranty was permitted to cancel the policy in compliance with statutory notice requirements of Md.Code (1974, 2006 Repl.Vol.), § 27–601 of the Insurance Article.[5] Therefore, when South-

---

**5.** The legislature, through section 2, ch. 580, Acts 2006, has redesignated this section, effective January 1, 2007, as § 27–602(b) through (d), and rewritten the section. The relevant part of § 27–601, effective through December 31, 2006, and at all times relevant to this case, was subsection (c), and read as follows:

*Notice of intention to cancel or not to renew.*—(1) At least 45 days before the date of the proposed cancellation or expiration of the policy, the insurer shall cause to be sent to the insured, by certificate of mailing, a written notice of intention to cancel for a reason other than nonpayment of premium or notice of intention not to renew a policy issued in the State.

(2) Notice given to the insured by an insurance producer on behalf of the insurer is deemed to have been given by the insurer for purposes of this subsection.

(3) Notwithstanding paragraph (2) of this subsection, no notice is required under this section if the insurance producer has replaced the insurance.

The relevant subsection is now § 27–602(c), which reads:

*Notice of intention to cancel or not to renew.*—(1) At least 45 days before the date of the proposed cancellation or expiration of the policy, the insurer shall send to the insured, by certificate of mail, a written notice of intention to cancel for a reason other than nonpayment of premium or notice of intention not to renew a policy issued in the State.

(2) An insurer shall maintain proof of mailing in a form authorized or accepted by the United States Postal Service.

(3) Notice given to the insured by an insurance producer on behalf of the insurer is deemed to have been given by the insurer for purposes of this subsection.

ern Guaranty did not receive any response to its inquiries regarding Anderson's payroll,[6] it issued a notice of cancellation for failure to comply with the audit provision. On January 16, 2003, Southern Guaranty mailed the notice, addressed to Anderson's Exxon c/o Ben Brown's Insurance Agency, at the address listed in the declarations page. The cancellation was effective March 4, 2003. On March 17, 2003, Southern Guaranty mailed Anderson a check for the unearned insurance premiums on the cancelled policy. The refund check was also sent to the address listed in the declarations, even though Southern Guaranty was aware of Anderson's business address in Ocean City. The refund check was eventually cashed by Anderson's Exxon.

As a result of an accident that occurred on July 24, 2003, a third party filed a personal injury claim against Anderson's Exxon. When Southern Guaranty received the claim, it informed the claimant that the policy had been cancelled. Anderson then filed a Complaint with the Maryland Insurance Administration alleging that Southern Guaranty had improperly cancelled the policy because it had no t provided him with the required notice. The Maryland Insurance Administration conducted an investigation, and determined that the cancellation was proper because Southern Guaranty provided proper notice.

Anderson requested a hearing, and the matter was referred to the Office of Administrative Hearings. After a hearing on the matter, the Administrative Law Judge affirmed the decision of the Maryland Insurance Administration. The Administrative Law Judge found that "the Licensee sent a notice of cancellation of policy 00CPP56144 to the Complainant's address as stated on the policy." Based on this and other findings of fact, the Administrative Law Judge concluded as a

---

(4) Notwithstanding paragraph (3) of this subsection, no notice is required under this section if the insured has replaced the insurance.

6. Profitworks never contacted Anderson directly to obtain payroll information. Southern Guaranty issued two notices to Ashcraft for assistance in obtaining the information, but received no such information.

matter of law that ·Southern Guaranty complied with the statutory requirements. Anderson filed a Petition for Judicial Review in the Circuit Court for Baltimore City. After a hearing, the Circuit Court affirmed the decision of the Administrative Law Judge.[7] Anderson appealed to the Court of Special Appeals. In an unreported opinion, the intermediate appellate court affirmed the judgment of the Circuit Court. The Court of Special Appeals concluded that "it was a factual question to determine whether notice to Brown under section 27–601 [8] constituted notice to Anderson because Brown was Anderson's agent." Because the Court of Special Appeals determined that the Administrative Law Judge's findings were supported by the evidentiary record, it upheld the Circuit Court's decision.

Thereafter, Anderson filed a petition for writ of certiorari in this Court, which petition we granted.[9] *Anderson v. General Casualty,* 399 Md. 592, 925 A.2d 632 (2007).

## DISCUSSION

Petitioner argues that Southern Guaranty was required to provide notice to Anderson directly, and that sending the notice of cancellation to Brown did not satisfy the requirements of § 27–601 of the Insurance Article, currently § 27–602. As support for his position, the petitioner cites *Admiral Ins. Co. v. John Stromberg & Assocs.,* 77 Md.App. 726, 551 A.2d 923 (1989), in which the court wrote: "[T]he statute was

---

**7.** Specifically, the Circuit Court ordered "that the decision of the Administrative Law Judge is not affected by any error of law and that the decision of the Administrative Law Judge is therefore affirmed."

**8.** Section 27–601 is part of the Insurance Article.

**9.** The petitioner presents the following questions in his petition for writ of certiorari:

1. Does notice to the insured's insurance agent comply with the notice requirements of § 27–601, *Insurance,* Md.Code Ann., when that Statute specifically requires notice to the insured of a proposed cancellation?

2. In reviewing the decision of the Administrative Law Judge, did the Court of Special Appeals apply the correct standard?

intended to benefit the individual insureds by giving them advance notice that their policy was going to be cancelled or non-renewed and affording them a reasonable opportunity to replace that insurance." *Admiral,* 77 Md.App. at 739, 551 A.2d at 930. Petitioner attempts to bolster his position by arguing that the legislature must have intended that the insurer personally notify the insured.

Petitioner further argues that the Court of Special Appeals erred when it found that "there was substantial evidence . . . to support the agency's findings." According to Petitioner, the issue in this case is purely a question of law, and therefore Petitioner asserts that the Court of Special Appeals should have substituted its judgment for that of the agency.

Respondent argues that because the agency's decision was based on substantial evidence, we should defer to its decision. Furthermore, Respondent maintains that it complied with the notice requirements by mailing the notice of cancellation to the insured, at the address listed in the declarations. In support of its position, Respondent argues that Brown was acting as Anderson's agent for purposes of procuring insurance and receiving insurance notices, and therefore sending notice to Anderson's agent fulfilled the requirements of the statute. Finally, Respondent posits that the public policy interests that Petitioners allude to were met when Southern Guaranty mailed the notice of cancellation to Brown.

The present case comes to this Court on review of an administrative agency decision. When this Court reviews a decision of an administrative agency, we take the same posture as the circuit court or the intermediate appellate court, and limit our review to the agency's decision. *Watkins v. Sec'y, Dep't of Pub. Safety & Corr. Servs.,* 377 Md. 34, 45–46, 831 A.2d 1079, 1086 (2003). In general, review of administrative agency decisions is narrow. *Id.* With respect to findings of fact, we must determine whether the agency decision is supported by substantial evidence in the record. *Board of Physician Quality Assurance v. Mullan,* 381 Md. 157, 164, 848 A.2d 642, 646 (2004). As to conclusions of law, we give

significant weight to an agency's experience in interpreting a statute the agency administers. *John A. v. Bd. of Educ. for Howard County*, 400 Md. 363, 382, 929 A.2d 136, 147 (2007). Nonetheless, if an agency has made an erroneous conclusion of law, it is our duty to correct that conclusion. *Id.*

 Maryland law requires that an insurance provider send notice of the intention to cancel, "to the insured," at least 45 days before it intends to cancel a policy. Md.Code (1974, 2006 Repl.Vol.), § 27–601 of the Insurance Article, now § 27–602. We are asked in the case at bar to interpret the meaning of the phrase "to the insured." The guiding principle of statutory interpretation is to ascertain and effectuate the legislature's intent. *Sprenger v. Pub. Serv. Comm'n*, 400 Md. 1, 29, 926 A.2d 238, 254 (2007). If the language of the statute, construed in light of its plain meaning, is unambiguous, our analysis ends there. *Id.* at 29–30, 926 A.2d at 254–55. Because we determine that the plain language of the statute is unambiguous, in that it requires an insurer to notify "the insured," we need not look to outside sources for further evidence of legislative intent.

Petitioner's reliance on *Admiral* is misplaced because its language merely confirms the legislative intent, which is undisputed. *Admiral* clarifies the intent of the statute at issue by declaring:

> Clearly, the statute was intended to benefit the individual insureds, by giving them advance notice that their policy was going to be cancelled or nonrenewed and affording them a reasonable opportunity to replace that insurance, either through another company or through the "facility" then in existence for insuring substandard risks. It was also, we think, for the public benefit; by affording individual insureds this opportunity to replace their insurance and thus continue their coverage, the statute reduced the risk of injury to innocent victims by uninsured motorists.

*Admiral*, 77 Md.App. at 739, 551 A.2d at 930. Petitioner is correct in asserting that the legislative intent is to notify the insured of a potential cancellation; however, Petitioner over-

looks that we cannot apply the statute in a vacuum. We consider the context in which the question of statutory notice arises. Moreover, as to context and factual predicate, *Admiral* is factually distinguishable, in that the insurer in *Admiral* never sent any notice to the insured, at any address. *Admiral,* 77 Md.App. at 735, 551 A.2d at 927.

Turning to the question of notice, in the context of the terms of the insurance policy at hand, we hold that Southern Guaranty met its obligations under the statute by mailing notice to Anderson at Brown's address. We begin our analysis with the well-settled principle that, under Maryland law, an insurance policy is a contract. *Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.,* 398 Md. 529, 540, 921 A.2d 245, 251 (2007); *United Servs. Auto Ass'n v. Riley,* 393 Md. 55, 79, 899 A.2d 819, 833 (2006); *Harleysville Mut. Ins. Co. v. Zelinski,* 393 Md. 83, 88, 899 A.2d 835, 838 (2006). Because the insurance policy is a contract, it is to be interpreted under the principles of contract law, which require that a contract be interpreted as a whole, in accordance with the objective law of contracts, to determine its character and purpose. *Riley,* 393 Md. at 79, 899 A.2d at 833.

Southern Guaranty was aware of Anderson's Exxon's physical location in Ocean City. The very purpose of the insurance contract, however, was to insure activities that were taking place at that location, making disclosure of the Ocean City location to Southern Guaranty necessary as the location of the activities to be insured. The use of Brown's address in the declarations page, indeed under the heading "Mailing Address," indicates the parties' mutual intent to use that address as Anderson's mailing address. Considering the contract as a whole, it is clear that the Ocean City location was merely the place to be insured, and that the parties intended Brown's address to be used as the mailing address for Anderson's Exxon. Because Southern Guaranty mailed the notice of cancellation to the "Mailing Address" designated in the insurance policy, it fulfilled its obligations under the statute.

To interpret an insurance contract otherwise would not only contradict its overall purpose but also would be unduly burdensome to insurance companies. Petitioner would have the insurer comb through pages of documents and mail the notice to any address mentioned in the contract, regardless of its purpose, within the context of the contract. This interpretation ignores the probability that many addresses may be listed in an insurance contract for purposes other than listing a mailing address.

 Whether Anderson directed that Brown's address be written into the contract or otherwise caused it to be so written is immaterial to this analysis because Anderson consented to using Brown as his agent for purposes of procuring insurance and receiving notices concerning insurance policies. An agency relationship is one that arises from the manifestation of the principal to the agent that the agent will act on the principal's behalf. *Ins. Co. of N. Am. v. Miller*, 362 Md. 361, 373, 765 A.2d 587, 593 (2001). Although such a relationship is not always contractual in nature, it must be consensual. *Id.* Ultimately, a reviewing court must determine that there was an intent to enter into an agency relationship. *Id.* That intent may be inferred from conduct, including acquiescence. *Green v. H & R Block, Inc.*, 355 Md. 488, 506, 735 A.2d 1039, 1049 (1999).

In this case, the Administrative Law Judge found that Anderson had used Brown, for 26 years, to obtain Anderson's insurance policies, receive notices, and provide him with copies. Anderson received a copy of the policy, including the declarations page. Anderson is presumed to know the contents of the contract he received, at least the declarations page. Upon receipt, Anderson apparently never questioned the use of Brown's mailing address listed in the declarations page, despite presumably knowing he could change it if he chose to do so. Together, these facts, and reasonable inferences drawn therefrom, indicate Anderson's consent to appoint Brown as his agent for his insurance needs, including receiving notices on his behalf.

One of the general principles of an agency relationship is that the "knowledge of the agent is knowledge of the principal." *Unsatisfied Claim & Judgment Fund Bd. v. Fortney*, 264 Md. 246, 255, 285 A.2d 641, 646 (1972). Where the matter is one that falls within the agent's scope of authority, the principal is charged with that knowledge. *See Fortney*, 264 Md. at 255–56, 285 A.2d at 646. Because Anderson intended to appoint Brown as his agent for purposes of procuring insurance and receiving related notices, and Brown did actually receive notice within the scope of that agency, Anderson is charged with knowledge of the notice of cancellation.

## CONCLUSION

Because we determine that the plain language of the statute is unambiguous, in that it requires insurers to send notice "to the insured," we need not look any further to determine legislative intent. Looking at the insurance contract as a whole, we hold that because Southern Guaranty mailed the notice of cancellation to the "Mailing Address" designated in the policy, such notice was sufficient for Southern Guaranty to properly cancel the insurance. Furthermore, Anderson's actions demonstrate an intent to appoint Brown as his agent for purposes of receiving such notices, and as such Anderson is charged with knowledge of the cancellation. Because there is substantial evidence supporting the agency's findings of fact, and the agency made no error of law in reaching its decision, the agency's decision should be affirmed.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**