960 A.2d 1241

**P OVERLOOK, LLLP**

v.

**BOARD OF COUNTY COMMISSIONERS OF WASHINGTON COUNTY, Maryland, et al.**

**No. 1142, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Dec. 2, 2008.

---

234

**236**

Stanley D. Abrams (Abrams & West, PC on the brief), Bethesda. (Scott D. Miller, Weinberg & Miller on the brief; Frederick), for Appellant.

Andrew F. Wilkinson, Hagerstown, for Appellee.

DEBORAH S. EYLER, SALLY D. ADKINS * (Specially Assigned) and LAWRENCE F. RODOWSKY, (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

This case concerns a nine-lot residential density restriction on certain property owned by P Overlook, LLLP ("Overlook"), the appellant, in Washington County. In 2003, the Board of Commissioners of Washington County ("the Commissioners"), the appellee, granted a piecemeal map amendment to Overlook's predecessors-in-title, Sylvia and William Martin, rezoning the property in question ("Property") to the Rural Village ("RV") district, conditioned upon the nine-lot density restriction. At that time, the RV zone was not yet in existence, but was projected to be once certain rural areas of the County were comprehensively rezoned.

Overlook participated in the map amendment process. Neither it nor the Martins challenged the density restriction. Indeed, they were notified that the map amendment request was being granted conditioned upon the nine-lot density restriction and that, if they did not agree to the condition within five days, they could withdraw their rezoning request. They

---

* Sally D. Adkins, Associate Judge of the Court of Appeals, participated in the hearing and conference of this case while an active member of this Court; she participated in the adoption of this opinion as a specially assigned member of this Court.

did not do so. Soon after the map amendment was granted, Overlook purchased the Property from the Martins.

In the meantime, comprehensive rezoning of certain rural areas, including the Property, was moving forward in Washington County. In 2005, when the comprehensive rezoning ordinance was enacted, the Property in fact was classified as RV. The ordinance itself was silent as to any density restriction for the Property.

A year later, Overlook wrote to the Zoning Administrator for the County asking him to "confirm" that the Property is located in the RV zone but is *not* subject to a nine-lot density restriction. By letter, the Zoning Administrator replied that, by virtue of the Commissioners' map amendment decision in 2003, the Property now is in the RV zone with a nine-lot density restriction.

Overlook challenged the Zoning Administrator's letter "determination" before the Washington County Board of Appeals ("Board"). The Board ruled that it was questionable whether the letter was an appealable "determination" and that, if it were, and even if the Zoning Administrator were in error, Overlook was estopped to challenge the density restriction.

In the Circuit Court for Washington County, Overlook filed an action for judicial review. The court upheld the Board's decision. In this Court, Overlook raises two questions for review, which we have rephrased:

I.    Did the Board err in determining that the Commissioners had lawfully placed a nine-lot density restriction on Overlook's property?

II.   Did the Board err by failing to find that the Commissioners exceeded their authority by imposing a restriction on the number of lots that could be developed on Overlook's property, as zoned, after the zone was created? [1]

---

1.  The questions as worded by Overlook contain several subparts, which are arguments in support of the two main issues raised. Overlook frames its questions as follows:

As we shall explain, the questions Overlook presents do not address the bases for the Board's decision. We shall affirm the Board's decision on the grounds on which it was made, and shall not address the issues raised by Overlook on appeal, as they are not properly before us.

## FACTS AND PROCEEDINGS

The Property is slightly less than 24 acres of land situated near Maryland Route 340 and Keep Tryst Road, in Washington County. When Washington County first adopted a Zoning Ordinance, in 1973, the Property was zoned "Conservation" ("C"). In the early 1980s, the Martins purchased the Property. In 1983, they applied for and obtained a zoning change to "Business–General" ("BG"). The Property as purchased included an existing motel, which the Martins planned to expand or rebuild. That plan never came to fruition, however.

On April 17, 2002, the Martins, through counsel, filed with the Washington County Planning Commission ("Planning

___

I. Did the Board of Zoning Appeals for Washington County err in its decision to affirm the nine (9) lot restriction on the Rural Village zoning of Appellant's property purportedly imposed by the Board of County Commissioners?

    a. Did the Board's decision affirm a prior impermissible zoning contract entered into by the Board of County Commissioners and the Martins; and,

    b. Was the Board's decision materially influenced by the actions of the Board of County Commissioners' 2003 rezoning by local map amendment of Appellant's property to a zone that did not exist at the time?

II. Did the Board of Zoning Appeals for Washington County err when it failed to find that the Board of County Commissioners exceeded its authority in rezoning Appellant's property to the RV zone with a restriction on the number of lots that could be created when:

    a. The Board of County Commissioners failed to follow statutory notification requirements for the imposition of conditions on zoning and the July 2005 ordinance adopting the comprehensive zoning contained no restriction on the number of lots that could be developed on Appellant's property; and,

    b. The density restrictions on the zoning or rezoning of property are not authorized under Article 66B of the Maryland Annotated Code or the zoning regulations applicable in Washington County?

Commission") a zoning map amendment application, seeking a piecemeal zoning reclassification to the "Residential Suburban" ("RS") zone. In Washington County, the Commissioners, as the local legislative body, determine amendments to the Zoning Ordinance, whether map or text. WASH. CO., MD., ZONING ORDINANCE art. 27, § 1 ("Zoning Ordinance" or "Ordinance"). The Martins alleged that the previous rezoning to the BG district had been a mistake. A hearing on their application was held on June 10, 2002. Before that date, they signed a contract to sell the Property to Overlook. Thus, at all relevant times in this case, Overlook was the contract purchaser or, later, the owner of the Property.

Residential development is not permitted in the BG zone. A zoning change for the Property to RS would have allowed residential development at a density of four single-family houses per acre. A representative of Overlook testified at the June 10, 2002 hearing that, if the Property were rezoned to the RS district, the company was going to develop it with 34 single-family houses.

On August 5, 2002, the Planning Commission recommended against the requested map amendment. Thereafter, the Commissioners denied the application.

Throughout this same time period, the Commissioners were in the process of revising Washington County's Comprehensive Plan. Effective August 27, 2002, they adopted a new Comprehensive Plan ("the Plan"). It was expected that, once the Plan was adopted, comprehensive rezoning to implement it would follow shortly and new zoning classifications would be adopted based upon the Plan's recommendations. One such recommendation was to eliminate the Residential Rural ("RR") district and create a new Rural Village ("RV") district. The Plan laid out 55 areas designated as Rural Village Policy Areas. The recommended new RV district would encompass those areas.

The "Sandy Hook Rural Village" district is adjacent to the Property. Before 2002, when the Plan was being developed but before it was finalized, the Martins had asked the Planning Commission to place the Property in that part of the RV

district, with a residential use designation. The Planning Commission declined, advising the Martins to make their request through the piecemeal rezoning process, *i.e.*, by requesting a zoning map amendment.

On January 15, 2003, again through counsel, the Martins filed another zoning map amendment application, this time seeking a reclassification to the RR zone.[2] Such a change would have permitted a residential density of 2 single-family houses per acre. On March 10, 2003, the Commissioners held a public hearing on the application. Testimony revealed that Overlook still was planning to develop 34 single-family residential lots on the Property, and wished to obtain a zoning change that would allow that level of development.

On April 2, 2003, the Planning Commission issued a Staff Report and Analysis recommending against the Martins' piecemeal rezoning application. The Staff Report acknowledged that there was merit in the Martins' argument that the Property had been zoned BG by mistake, in 1983, and that reverting to the prior "C" zoning would not be appropriate. It expressed concern, however, about the density of any residential development of the Property. Five days later, the Planning Commission issued its Report and Recommendation against the rezoning application. It stated:

> [T]he proposed Rural Residential designation for this property was not appropriate for the area and that the commercial designation could provide opportunities for retail services for the citizens of the area. *If it were to be rezoned for residential development, then [the Planning Commission] would recommend a classification that would limit the amount of future development.*

(Emphasis added.)

On August 5, 2003, with the County Attorney in attendance, the Commissioners reviewed the Martins' zoning map amend-

---

2. Actually, this was the Martins' third zoning map amendment application. On August 23, 2002, they had filed an application seeking a zoning change to RS or, in the alternative, Agricultural ("AG"). They withdrew that application on November 19, 2002, however.

ment application. The County Attorney pointed out that the rezoning request was to the RR zone, which would not exist under the new zoning classifications proposed under the Plan. Individual commissioners expressed concern about the application, including about the density of any future residential development. Thereafter, on August 26, 2003, the Commissioners considered and granted a request by counsel for the Martins to remove the application from the agenda and send it to the Planning Commission "for consideration of the appropriate density of single-family residential development, which may be established by the attachment of a condition to rezoning." The Commissioners noted that the County Attorney "advised the Board that the Zoning Ordinance allows the attachment of conditions to the granting of rezoning. The Planning Commission would then make a recommendation on the proposed density to the Commissioners." *See* Excerpt of Board of County Commissioners Meeting, August 26, 2003, Hagerstown, Maryland.

At the same time, the comprehensive zoning process for Washington County was moving forward. On September 15, 2003, the Planning Commission issued a Staff Report and Analysis respecting "Comprehensive Rezoning of the Rural Area of Washington County" ("the CRRA Report"). The CRRA Report included a proposed draft of a text amendment to the Zoning Ordinance, including adoption of the RV district as a new zoning classification. It did not place the Property in the RV district. Rather, it designated the Property in the "Environmental Conservation" ("EC") zone. An EC zoning classification would have allowed residential development but would have greatly limited it, to one single-family house per 20 acres. On the day the CRRA Report was issued and then on October 8, 2003, public hearings were held on the proposed zoning changes. The record was then held open for ten days for further public comment.

On October 20, 2003, with the Martins' zoning map amendment application still pending, their lawyer wrote to the Commissioners about the zoning status of the Property vis a

vis the upcoming comprehensive rezoning anticipated by the Plan. The letter states, in pertinent part:

After conferring with the County Attorney, in the event the County determines to proceed with the comprehensive rezoning proposal now pending, the classification proposed to be assigned comprehensively may undermine any favorable action you may take upon the pending petition for "RR" rezoning.

A year or so ago, the Martin family requested inclusion in the Rural Village defined in the [Plan]. The Planning Commission recommended, instead, that [the Martins] initiate a piecemeal rezoning request, and [they] have pursued that recommended course of conduct ever since. Because of the convergence of your deliberations and the approaching time of enactment of comprehensive rezoning, the County Attorney has suggested that [the Martins] renew their request for inclusion of their property within the boundary of the designated Sandy Hook Rural Village.

Accordingly, on behalf of [the Martins], I submit the enclosed Formal Request to Review Zoning Change, in order that it may be considered with other map amendments prior to adoption of the comprehensive rezoning of the County now under consideration.

The attached "Formal Request to Review Zoning Change," signed by counsel for the Martins on their behalf, included the following form language:

Request is hereby made by the current and true owner(s) of the afore mentioned [sic] property for review of the proposed zoning changes. I/We request the following changes to the property listed above:

Current proposed zoning: **BG**

Requested zoning: **Rural Village**

\* \* \* \*

By signing this request I/We do certify that I/We are the legal and true owner(s) of the above mentioned property *and hereby assent to Planning Commission review of this*

*request for the purposes of the Comprehensive Rezoning of Washington County.*

((Written additions to form in bold) (emphasis added).)

On October 28, 2003, the Commissioners met about the Martins' zoning map amendment application. The County Attorney appeared and recited the history of the application, adding that the Planning Commission had failed to make any recommendation about appropriate residential density and had returned the matter to the Commissioners for further action. The minutes state:

> [The County Attorney] stated that he has met with the Martin's [sic] legal counsel and discussed that a possible alternative would be to rezone the property to Rural Village with the consent of the property owner. He indicated that this would involve the rezoning and expansion of the Rural Village boundary to include the Martin property. [He] also stated that the new Comprehensive Plan does not contain the Rural Residential zoning classification that was originally requested by the [Martins], and that rezoning to the RS classification would otherwise be consumed by the comprehensive rezoning, absent the execution of a development rights easement. The Commissioners discussed the alternatives. Commissioner Snook expressed concerns about the "bartering" taking place about the number of lots allowed and the proposed zoning classifications. [The County Attorney] suggested that [the Martins] be given five working days after the decision is rendered to request that the case be withdrawn.

The Commissioners voted in favor of a motion to grant the map amendment application to rezone the Property from BG to RV, "with the condition of a nine-lot maximum density."

Thereafter, the Commissioners issued a 19–page opinion entitled "Findings of Fact and Articulation of Reasons for Decision" in the Martins' zoning map amendment application case. They found that the 1983 rezoning to BG was a mistake; that rezoning to RR would not be "appropriate and logical" because the Plan called for that zone to be eliminated and, if

the Property were rezoned RR, then when the comprehensive rezoning took place, it would be assigned another zoning district, "which in all likelihood would be Rural Village"; that the density of the proposed 34 lot single-family residential development of the Property would not be compatible with the scale of the adjacent Sandy Hook Rural Village; and that a density limited to nine lots (2.65 acres per lot) "would be an appropriate transition between the smaller lots on Sandy Hook Road and the slightly larger ones that are now zoned Conservation." The decision authorized an amendment to the Plan to add the Property to the adjacent Sandy Hook Rural Village Policy Area to be adopted as part of the CRRA Report "with the condition that not more than nine (9) lots may be developed on the subject property." The decision gave the Martins 5 days to withdraw their rezoning application if they did not agree to the density limit condition; otherwise, they would be deemed to have consented.

There is nothing in the agency record to suggest that either the Martins or Overlook did not have actual knowledge of the decision to rezone the Property to the RV district, conditioned upon a nine-lot density restriction. It is undisputed that the Martins received the Commissioners' written decision, including the language informing them that they could withdraw their application if they objected to the nine-lot density restriction. They did not withdraw their application. Nor did they challenge in an action for judicial review the Commissioners' imposition of a density limit condition on the grant of their rezoning request.

A few months later, the Commissioners began the comprehensive rezoning process of deciding 37 requests by property owners to review or change zoning classifications proposed in the CRRA Report. The Martins' "Formal Request to Review Zoning" was one of them.

Overlook closed on the purchase of the Property from the Martins on February 4, 2004.

On September 14, 2004, the Commissioners held a public hearing on the 37 individual zoning requests. With respect to

the Martins' request, they determined that they previously (on October 28, 2003) had authorized the change in zoning of the Property to the RV zone, with a nine-lot density restriction, and for that reason no further action was required. Specifically, the "Staff Analysis" for the Martins' formal request states,

NO * * A rezoning request from BG to RR was pending on the Martin property (RZ–03–001). On 10/28/03 the BOCC Reviewed & App'd Request for RV, with a 9–lot Density.

About ten months later, after public hearings, the Commissioners adopted the CRRA Report, thereby establishing the RV zone (and others). An ordinance effectuating that decision, a resolution adopting a revised Comprehensive Plan Map for the rural areas of Washington County, and an ordinance repealing certain provisions of the Zoning Ordinance and reenacting them with changes were adopted on July 26, 2005, all effective retroactive to July 12, 2005.

On July 14, 2006, almost three years after the Commissioners granted the Martins' zoning map amendment application and a year after the amendments to the Zoning Ordinance were enacted, Overlook's lawyer wrote a letter to the County Zoning Administrator seeking confirmation that the Property now was in the RV zone *without* a nine-lot residential density restriction. Overlook asserted that, because the RV zone did not exist on October 28, 2003, when the Commissioners voted to rezone the Property to RV subject to the nine-lot density restriction, their action had no effect; only when the RV zone actually was created by the Commissioners, effective July 12, 2005, and the County updated its Plan and zoning maps in accordance with the CRRA Report, did that zone become available for designation. "By adoption of the comprehensive rezoning map ... the [Commissioners] legally rezoned the [P]roperty to the Rural Village category, but by such action [they] did not condition or restrict the development of the [P]roperty to a nine (9) lot limit."

The Zoning Administrator responded by letter of September 13, 2006, stating that the Property indeed was zoned RV

but *with* a nine-lot residential density restriction because the Commissioners and the Martins had agreed to that as a condition to the grant of the Martins' zoning map amendment application. The Zoning Administrator explained:

Considering the actions of the [Commissioners], and the consent and approval of the [Martins], whose legal counsel was intimately involved in all phases of the rezoning, it is my position the density limit still applies to the Property. This was a piecemeal zoning request, approved after much discussion, debate and compromise by all parties. The [Martins were] given the opportunity to withdraw the request if the condition regarding density was not acceptable. The [Martins], who fully participated in the rezoning process by and through [their] attorney, chose not to withdraw the application.

On October 2, 2006, Overlook appealed the Zoning Administrator's letter "determination" to the Board. The Board held a public hearing on the matter on October 25, 2006. It voted to deny the appeal. On November 22, 2006, it issued a written opinion making findings of fact and explaining its denial decision. The factual findings were as we have recounted the facts above. The Board also found that, at all relevant times, as far back as 2002, Overlook or a related entity was a party to all proceedings concerning the Property.

In its analysis, the Board expressed "serious doubts as to whether the Zoning Administrator's letter [of September 13, 2006] was an appealable 'determination' pursuant to the reasoning set forth in *United Parcel Service, Inc. v. People's Counsel for Baltimore County, Maryland et al.*, 336 Md. 569, 650 A.2d 226 (1994)." The Board went on to reason that, even if the letter were an appealable determination, Overlook was barred, by equitable estoppel principles, to challenge the Zoning Administrator's decision:

This seems to us to be a clear instance where a party's complicity in obtaining a zoning classification, with conditions, cannot later allow the same party to attempt to disclaim the validity of those conditions. In fact, given the

circumstances presented here, if any error was committed by the County, [Overlook] (and its predecessor in title) invited it.

The [P]roperty owner-at all times represented by counsel-requested that the Rural Village designation be applied to the [P]roperty. The Comprehensive Plan, in 2002, clearly reflected the intention of the County to implement an RV zoning classification. The staff reports, Commissioners meeting minutes, and the Findings of Fact and Articulation of Reasons for a Decision clearly indicate that the Commissioners heard (at public hearing) and addressed 37 requests by property owners-including this one-for reclassification as part of the comprehensive rezoning, each of which clearly indicate the intention to place a density limit on the subject [P]roperty. The [P]roperty owner asked for the designation and, when they got it, failed to withdraw their application and were deemed to have consented to the reclassification and its conditions. They were intimately involved throughout the rezoning process which resulted in their receiving what they asked for. For them to be allowed to now attack that action would be to reward their unclean hands.

As noted, in the Circuit Court for Washington County, Overlook filed an action for judicial review, challenging the agency's decision. On June 29, 2007, the court issued an opinion affirming the Board's decision made on the basis of estoppel.

## STANDARD OF REVIEW

On appellate review of an administrative agency's decision, this Court reviews the agency's decision, and not that of the circuit court. *Anderson v. General Cas. Ins. Co.*, 402 Md. 236, 244, 935 A.2d 746 (2007). Appellate review of an agency's factual findings is limited to "determin[ing] whether the agency decision is supported by substantial evidence in the record." *Id.* The appellate court " 'must not itself make independent findings of fact or substitute its judgment for that of the agency.' " *Maryland–National Capital Park and*

*Planning Comm'n v. Anderson,* 395 Md. 172, 180–81, 909 A.2d 694 (2006) (quoting *Baltimore Lutheran High School Ass'n v. Employment Sec. Admin.,* 302 Md. 649, 662, 490 A.2d 701 (1985)). With regard to the agency's legal conclusions, however, appellate review is less deferential; this Court can reverse the agency's legal decisions "where the legal conclusions reached by that body are based on an erroneous interpretation or application of the zoning statutes, regulations, and ordinances relevant and applicable to the property that is the subject of the dispute." *People's Counsel for Balt. County v. Surina,* 400 Md. 662, 682, 929 A.2d 899 (2007). Nonetheless, in determining whether the agency was erroneous in its legal conclusion, some deference is given to the agency and its expertise in administering the law is considered. *Id.* at 682–83, 929 A.2d 899 (quoting *Marzullo v. Kahl,* 366 Md. 158, 172, 783 A.2d 169 (2001)).

## DISCUSSION

In its two questions presented, Overlook advances several legal arguments as to why, in its view, the Property now is zoned RV without any density restriction. In support of its first contention, that the Board erred in ruling that the Commissioners lawfully placed a nine-lot density restriction on the Property, Overlook maintains that 1) the Commissioners' October 28, 2003 decision granting the Martins' zoning map amendment application by reclassifying the Property to the RV zone conditioned on a nine-lot density restriction was illegal contract zoning, and therefore was "null and void"; and 2) that same decision also was "null and void" because the Commissioners lacked authority in 2003 to rezone the Property to a zone that did not yet exist (and did not come to exist until 2005).

In support of its second contention, that the Board erred by not finding that the Commissioners exceeded their authority by rezoning the Property, Overlook argues 1) that, if the Commissioners intended to impose a lot density restriction on the Property when it was comprehensively rezoned, they failed to give notice as required by Article 66B of the Mary-

land Code, and, in any event, the Zoning Ordinance as enacted effective July 12, 2005 did not impose a condition limiting the number of lots in its RV zoned Property; and 2) the Commissioners had no authority under Article 66B to impose a density condition on the Property as part of the comprehensive rezoning process.

In fact, the Board did not decide any of these issues. Interesting as some of them are, they were not considered and resolved by the Board. Rather, the Board decided, as we have stated above, that it was questionable whether Overlook had any right to appeal the Zoning Administrator's September 13, 2006 letter and, if it did have such a right and there was any error, Overlook was precluded, by equitable estoppel principles, from attacking the Zoning Administrator's letter statement that a nine-lot density restriction applies to the now RV-zoned Property. The only question properly before this Court, then, is whether the Board's decision, on the grounds on which it was made, was supported by substantial evidence in the agency record and was not founded upon legal error.

As previously mentioned, in its decision, the Board found questionable any right of Overlook to challenge through the zoning appeals process the Zoning Administrator's September 13, 2006 letter. In that letter, the Zoning Administrator recounted the history of the Martins' various zoning map amendment applications for the Property, the Commissioners' decision to grant the application to rezone to RV conditioned upon a nine-lot density restriction, and the Property's inclusion in the new RV zone when comprehensive zoning was enacted in 2005. The only arguably "determinative" sentence in the letter reads, "Considering the actions of the [Commissioners], and the consent and approval of the [Martins], whose legal counsel was intimately involved in all phases of the rezoning, it is my position the density limit still applies to the Property."

The Zoning Administrator is charged with administering the

Zoning Ordinance.[3] ZONING ORDINANCE art. 24, § 1(a). "An appeal from a decision of the ... Zoning Administrator shall be made to the Board of Appeals as provided in Section 25.4" of the Zoning Ordinance. *Id.* As pertinent to this case, the Board has among its general powers the authority "[t]o hear and decide appeals where it is alleged there is an error in any order, requirement, decision or determination made by an administrative official in regard to the enforcement of this Ordinance" and, in exercising those powers, "may, in conformity with the provisions of law and this Ordinance and amendments thereto, reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from, and make such order, requirement, decision or determination as ought to be made." ZONING ORDINANCE art. 25, §§ 2(a) and (d). Under Section 25.4, "[a]n appeal to the Board may be taken by any person aggrieved ... by any decision" of the Zoning Administrator.

A threshold question before the Board was whether the Zoning Administrator's September 13, 2006 letter was an "order, requirement, decision or determination made by an administrative official in regard to the enforcement of this Ordinance." ZONING ORDINANCE art. 25, § 2(a). In expressing doubt that the letter so qualified, the Board cited *United Parcel Service, supra,* 336 Md. 569, 650 A.2d 226.

In that case, UPS planned to acquire land in Baltimore County on which to build a facility. Before doing so, in 1985, it approached the county's zoning commissioner and received an informal oral opinion that its proposed use for the land was permitted as of right in the zone in which the land was situated. UPS wrote a follow-up confirmation letter, on which the zoning commissioner hand wrote that the use in question

---

**3.** In 2004, the Zoning Ordinance was changed such that the position of the "Zoning Administrator" was created. The present case is not affected by the change because the same procedures and appeals processes were in place before and after the creation of the "Zoning Administrator"; the only applicable change was the addition of the "Zoning Administrator" position. *See* ZONING ORDINANCE art. 24, § 1(a) n. 166.

was permitted as of right. UPS purchased the land and in 1986 applied for a building permit. The permitting process required approval by the zoning commissioner that the proposed use was in compliance with the zoning ordinance. The zoning commissioner gave his approval and the permit was issued.

The following year, after construction was underway, a local citizen wrote a letter complaining that the use was not permitted as of right in the zone, but was allowed only by special exception, which had not been sought or obtained. The crux of the citizen's complaint was that the use proposed by UPS—a warehouse—was not the actual use of the property—a trucking facility. The zoning commissioner responded by letter, dated January 19, 1987, stating that the use for which the construction was being undertaken (a warehouse) indeed was permitted as of right in the zone, and that the building permit had been issued on that basis. The citizen, not happy with that response, filed an appeal of the zoning commissioner's letter with the board of zoning appeals.

Before the board, UPS argued (among other things) that the zoning commissioner's 1987 letter was not an appealable decision because it merely confirmed his earlier decision that a warehouse use is permitted as of right in the zone. The board agreed but nevertheless went on to rule against UPS on the merits of the timeliness of the appeal, that is, whether it properly was brought within 30 days of the 1987 letter or should have been brought within 30 days of the 1985 letter or of the 1986 permit issuance. Ultimately, the board decided that the appeal had been timely noted but that it was not meritorious, as the proposed use (a warehouse) was permitted as of right in the zone.

In an action for judicial review, the circuit court reversed, ruling that the proposed use was a trucking facility, not a warehouse, and therefore was not permitted as of right in the zone. After that decision was affirmed by this Court, the Court of Appeals granted *certiorari*, and reversed, with in-

structions that, when carried out, would result in the board's dismissing the administrative appeal.

On the issue pertinent to the case at bar, the Court of Appeals held that the zoning commissioner's 1987 letter was not a "decision" that was appealable under the county code. The letter "simply confirmed or reaffirmed [the zoning commissioner's] prior 'approval' or 'decision' that UPS's use was a permitted one." *Id.* at 582, 650 A.2d 226. "The 'approval' or 'other form of permission' in this case, and the 'decision' of the Baltimore County officials, occurred in 1986 when the Zoning Commissioner and other officials approved UPS's application for a building permit and the Building Engineer issued a building permit." *Id.* at 583, 650 A.2d 226. The Court further explained that the clause in the Express Powers Act, applicable to Baltimore County as a charter county, granting

> a board of appeals appellate jurisdiction from "the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval ... or other form of permission[,]" ... obviously refer[s] to an operative event which determines whether the applicant will have a license or permit, and the conditions or scope of that license or permit. *The plain import of the words would not include a statement simply confirming that a license or permit was issued or denied in the past or defending a past issuance or denial of a license or permit.* In the context, the phrase "approval ... or other form of permission," on which the protestants place so much reliance, seems to have been designed simply to encompass all forms of licensing regardless of what the particular license or permit may be called. Nevertheless, the appealable event is the issuance, renewal, revocation, etc. of the license or permit. In the present case, this appealable event occurred in 1986 when the application for a building permit was approved and the permit was issued.

*Id.* at 583–84, 650 A.2d 226 (footnote omitted) (emphasis added).

■ The holding in the *UPS* case is not squarely on point in part because Washington County is not a charter county, and therefore its zoning authority is derived not from the Express Powers Act but from Md.Code (1957, 2003 Repl.Vol.), Article 66B. The *UPS* case is similar to the one at bar, however, in that it makes clear that a zoning official's mere confirmation of a prior decision is not itself a zoning decision. Here, Overlook's counsel's letter to the Zoning Administrator, in 2006, inquired about the zoning status of the Property. In reply, the Zoning Administrator stated that the Property was zoned RV with a nine-lot density restriction, as per the Commissioners' decision of October 2003, and that that zoning status was not changed by the 2005 comprehensive zoning. Thus, the Zoning Administrator simply was reporting past events.

Virtually all of Overlook's legal challenges to the nine-lot building restriction on the Property could have been, and if objectionable should have been, pursued in an action for judicial review of the Commissioners' October 28, 2003 decision. Section 4.08(a) of Article 66B grants a person aggrieved by a zoning action of a local legislative body the right to challenge the action in circuit court. When the Commissioners decided the Martins' zoning map amendment application by granting the zoning change to RV conditioned upon a nine-lot density restriction, the Martins could have withdrawn the application (as the decision invited them to do if they were not satisfied) or could have challenged that part of the decision adverse to them—the density restriction—in circuit court. Had they filed an action for judicial review of the Board's decision, the circuit court would have been called upon to decide most of the issues Overlook raised in its challenge to the Zoning Administrator's September 13, 2006 letter "determination": that the density restriction was "null and void" as being the product of illegal contract zoning; that it was "null and void" because rezoning to RV before the zone actually existed was outside the Commissioners' authority; and that Article 66B does not permit density restrictions as conditions to zoning.

Overlook did not pursue an action for judicial review of the Commissioners' October 28, 2003 decision and the time period for doing so expired long ago. Overlook's July 14, 2006 letter to the Zoning Administrator expressly sought "confirm[ation]" that the Property is zoned RV without a nine-lot density condition. To the extent the Zoning Administrator, in his September 13, 2006 letter, merely confirmed that the Commissioners had rezoned the Property to the RV zone subject to a nine-lot building restriction, the letter was not a "decision" or "determination"; indeed, if it were otherwise, any party who has failed to file an action for judicial review to challenge a zoning action of the Commissioners could collaterally attack the same zoning action by writing to the Zoning Administrator, obtaining written confirmation that the Commissioners indeed took the zoning action they did, and then appealing the confirmation letter as a "decision" or "determination." Overlook cannot collaterally attack the Commissioners' October 28, 2003 decision to rezone the Property to the RV zone conditioned upon a nine-lot density restriction. It consented to the condition and at the same time waived its right to challenge any part of it by not filing an action for judicial review within 30 days of October 28, 2003. *See* Md. Rule 7–203 (2008) (a petition for judicial review must be filed within 30 days of the latter of the date of the administrative agency's order or action or the date the administrative agency sent notice to the petitioner).

The Board properly questioned the appealability of the Zoning Administrator's September 13, 2006 letter. Those portions of the letter restating the Commissioners' 2003 decision were not themselves a "decision" or "determination" subject to appeal to the Board under Zoning Ordinance section 25.2(a). None of the issues that Overlook could have raised by way of an action for judicial review of the Commissioners' October 28, 2003 decision, but did not, and that it then raised before the Board, the circuit court, and now this Court, were properly before the Board to begin with.

■ As mentioned above, there is but one sentence in the Zoning Administrator's letter that possibly could be construed as a "decision" or "determination" under section 25.2(a), and therefore subject to appeal before the Board. In that sentence, the Zoning Administrator states that the nine-lot density restriction imposed by the Commissioners in their October 28, 2003 decision survived the enactment of the new comprehensive rezoning ordinance that became effective on July 12, 2005. Even if this decision somehow were appealable, we agree with the Board's finding that Overlook is equitably estopped to maintain otherwise.[4]

The Martins and Overlook participated not only in the zoning map amendment application process for the Property but also in the comprehensive rezoning process as it affected the Property. If the Property had been comprehensively rezoned according to the Plan, it would have been placed in the EC district, in which only two residential lots would be allowed. In October 2003, as we have explained, counsel for the Martins filed a formal request with the Commissioners asking that the Property be included in the RV zone during the comprehensive zoning process. The request is listed in the Commissioners' chart as having been "Received After 8/11/03 & During the Public Hearing Timeframe." The minutes of the public hearing before the Commissioners on September 14, 2004, reflect that the Martins' request was addressed as number 36 out of 37 formal requests, and that "the

---

4. The equitable estoppel principle as applied in this case to Overlook is not to be confused with the doctrine of "zoning estoppel," which Maryland does not recognize. Under the doctrine of zoning estoppel, a local government, acting in a governmental capacity, will be estopped to exercise its zoning powers over property when the property owner relied in good faith upon an act or omission of the local government and made "such a substantial change in position or incurred such extensive expenses that it would be manifestly unjust to permit the government to destroy the rights of the property owner by subsequent regulation." *County Council of Prince George's County v. Offen,* 334 Md. 499, 505 n. 4, 639 A.2d 1070 (1994). Maryland courts analyze such issues in terms of vested rights, not zoning estoppel. *Sycamore Realty Co., Inc. v. People's Counsel of Baltimore County,* 344 Md. 57, 66–67, 684 A.2d 1331 (1996). In the case at bar, we are not applying an estoppel principle against a governmental entity.

request for the Martin family property (# 36) was previously acted upon by the Commissioners on October 28, 2003 (RZ–03–001)." The request is denominated "William Wantz, Esq. for Robert Martin & the Martin Property" and the staff analysis for it expressly states that the Commissioners had approved, on October 28, 2003, the "Request for RV, with a 9–lot Density." There is nothing in the agency record to suggest that either the Martins or Overlook was not aware of the comprehensive rezoning proceedings, including the September 14, 2004 public hearing, and indeed the Martins' counsel's name on the request suggests precisely the opposite, *i.e.*, that the reason the Martins' formal request for comprehensive rezoning of the Property was handled as already having been addressed in the map amendment case, with the zoning changed to RV with a nine-lot density condition, was because that is what the Martins wanted the Commissioners to do.

The doctrine of equitable estoppel has been frequently defined in Maryland:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

*Hill v. Cross Country Settlements, LLC,* 402 Md. 281, 309, 936 A.2d 343 (2007) (quoting *Cunninghame v. Cunninghame,* 364 Md. 266, 289, 772 A.2d 1188 (2001)). There are thus three elements to equitable estoppel: " 'voluntary conduct or representation, reliance, and detriment.' " *Id.* at 310, 936 A.2d 343 (quoting *Mona Elec. Co. v. Shelton,* 377 Md. 320, 334, 833 A.2d 527 (2003)). "[T]he party claiming the benefit of the estoppel must have been misled to his injury and changed his position for the worse, having believed and relied on the representa-

tions of the party sought to be estopped." *Knill v. Knill,* 306 Md. 527, 534, 510 A.2d 546 (1986). In other words, equitable estoppel is based on one party's conduct affecting another party's conduct or position. *Creveling v. Gov't Employees Ins. Co.,* 376 Md. 72, 101, 828 A.2d 229 (2003). The intent of the party who made the representation is not dispositive; even if the representing party lacked an intent to mislead, what matters is whether that party's actions caused the other party to change his conduct in a detrimental way. *Knill, supra,* 306 Md. at 534, 510 A.2d 546. The party asserting the defense of equitable estoppel has the burden of proving each of the facts and elements of the estoppel. *Id.* at 535, 510 A.2d 546.

Maryland cases have applied principles of equitable estoppel in a zoning context when a zoning applicant has pursued and obtained a zoning change only later to attack the change as invalid. In *Skipjack Cove Marina, Inc. v. County Comm'rs for Cecil County,* 252 Md. 440, 250 A.2d 260 (1969), land owners sought a decision from the board of zoning appeals that their proposed use did not require a special exception. The board disagreed, and ruled that a special exception was required. The board then granted a special exception, with certain conditions. Three years later, Skipjack, the land owner's successor-in-title, asked the board to modify the conditions previously imposed. The board heard testimony and denied the request, noting that the conditions were appropriate and necessary for the protection of the surrounding area and that the special exception would not have been granted without the conditions.

Skipjack challenged the board's decision in an action for judicial review. Ultimately, the Court of Appeals held that

Skipjack, as subsequent purchaser of the subject property ... has taken subject to the prior decision of the [b]oard, and by accepting the benefits and advantages of the special exception, subject to the conditions, cannot now be heard to attack the validity of the conditions upon which its rights to the special exception were expressly predicated by the [b]oard.

*Id.* at 450, 250 A.2d 260. In so holding, the Court quoted as follows a decision by the Supreme Court of Illinois:

"Plaintiffs did not pursue their remedy for review under the Administrative Review Act, but instead accepted the benefits granted to them by the terms of the variations. They now assert that the portions of the orders which granted the benefit of variations are valid, but that the portions imposing the conditions are void. Such a position cannot be sustained. A party who has accepted and retained the advantages of an order cannot be heard to attack the validity or propriety of conditions upon which its right to such advantages was expressly predicated. (citing cases) By accepting the advantages of the variation they have waived whatever error may have existed in imposing the conditions upon which the variation was granted."

*Id.* (quoting *Zweifel Mfg. Corp. v. City of Peoria,* 11 Ill.2d 489, 144 N.E.2d 593 (1957)).

In an administrative law liquor license case, the Court of Appeals similarly applied an estoppel theory. In *Board of Liquor License Comm'rs for Balt. City v. Fells Point Café, Inc.,* 344 Md. 120, 685 A.2d 772 (1996), tavern operators, in order to obtain a liquor license, agreed to the local liquor board's placing restrictions on their license. The operators later were charged with violating the restrictions. In defense, they argued that the restrictions had been beyond the power of the liquor board to impose. The Court of Appeals held that it would be inequitable to allow the tavern owners to accept and retain the advantages of their agreement, *i.e.,* the liquor license, and to at the same time attack the conditions to which the agreement was subject, *i.e.,* the restrictions.

A District of Columbia zoning case applying the doctrine of equitable estoppel is similar to the case at bar. In *Nathanson v. D.C. Bd. of Zoning Adjustment,* 289 A.2d 881 (1972), property owners sought a special exception to erect a storage facility on the rear area of their liquor store property. The special exception was granted subject to the condition that the owners also build a 42 inch masonry wall to screen the storage

facility area from view of surrounding properties. The owners applied for and received a building permit for the storage facility that did not include the wall. When neighbors complained, the zoning board issued an order directing the owners to show cause why the special exception should not be revoked for failure to comply with the condition. In response, the owners asked the board to remove the condition.

The board refused to remove the condition. That decision was affirmed on judicial review. The court observed:

> The time to press objections to the condition was before taking advantage of the special exception benefits. Having accepted the benefits without contesting the condition [the owners] have waived any error that may have existed and may not now object to enforcement of the condition.

*Id.* at 885.

In the case at bar, we cannot fault the Board's application of the doctrine of equitable estoppel to bar Overlook from challenging the nine-lot density restriction on the Property. Overlook was on notice of and participated in the map amendment and comprehensive rezoning proceedings affecting the Property. It and the Martins wanted the Property rezoned to support residential development. The BG district, in which the Property was located before the map amendment decision and before comprehensive rezoning, did not allow any residential development. In the map amendment proceedings, the Commissioners made clear that they were not going to rezone the Property to allow the high density development that Overlook was seeking. At the same time, the comprehensive rezoning proceedings called for the Property to be rezoned into the EC district, which would allow residential development but at an extremely low density—no more than 2 lots for the entire Property.

The map amendment decision, approving rezoning of the Property to the RV district with a nine-lot density restriction, was to Overlook's (and therefore the Martins') advantage. It would allow residential development at a density above what the land would be rezoned in the ordinary course of events but

below what Overlook desired. It was relied upon by the Commissioners, who, had there not been a density restriction, would have declined any rezoning to the RV district and would have maintained their original plan to comprehensively rezone the Property to the EC district. Overlook purchased the Property with full knowledge of the density restriction.

Overlook's later position, that the comprehensive rezoning of the Property resulted in its being placed in the RV district with no density restriction, was an obvious attempt to benefit from the rezoning to the RV district, which only was allowed with the density restriction condition and would not have happened without it, while at the same time attacking the density condition that enabled them to obtain the rezoning in the first place. In their decision in the map amendment case, the Commissioners explained that the high density (34 lot) development Overlook was seeking would not be in harmony with the surrounding area at that time or once comprehensive rezoning was accomplished. The Commissioners made their map amendment decision conditional, as a compromise that was to Overlook's benefit. The Board did not err in ruling that Overlook cannot now be heard to challenge the part of that compromise that was to the Commissioners' benefit while accepting the part of the compromise that was to its own benefit.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**