## SICA *v.* RETAIL CREDIT COMPANY, ET AL.

[No. 137, September Term, 1966.]

608

*Decided March 9, 1967.*

*Motion for reargument filed on April 10, 1967, denied on April 11, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*Richard R. Beauchemin* for appellant.

*Philip T. McCusker* and *Paul V. Niemeyer,* with whom were

*Jesse Slingluff* and *Piper & Marbury* on the brief, for appellees.

OPPENHEIMER, J., delivered the opinion of the Court.

Vincent Sica, the appellant, was seriously injured at an employer-sponsored picnic. The Workmen's Compensation Commission held that his injuries were not compensable under the Workmen's Compensation Act because they did not arise out of and in the course of his employment. On appeal to the Superior Court of Baltimore City, Judge Dulany Foster, sitting without a jury and trying the case on the record before the Commission, affirmed the Commission's decision. The case is one of first impression in this State.

The facts for the most part are not disputed. Sica was employed by the Retail Credit Company in March, 1963, as a claims investigator. (The company, and the Travelers Insurance Company, its insurer, are the appellees; the company is hereinafter referred to as the employer). In the interview which led to Sica's employment, he was told by the employer's manager that he would be paid for vacation and medicine and life insurance, and that there would be an annual picnic during the summer and a dance during the Christmas holidays. His starting salary was $325 a month plus car expenses of about nine cents a mile. At the time of the accident, Sica's monthly salary was $410 plus a bonus. The employer works for insurance companies and a claims investigator such as Sica investigates claims for these companies. Most of Sica's work was out-doors; his hours, technically, were from 8 or 8:30 A.M. to 4:30 P.M., but, because of the work-load, he had to work many extra hours. The hours of employees such as Sica are not regulated; their initiative and enthusiasm are a necessary part of their work. The employer's offices are open every Saturday, with a skeleton crew. Sica was not ordered or required to come in on Saturday, but he often did so, to get his work done.

During the month of February, 1965, preparations were made for the annual picnic. It was a joint affair of the employer's two Baltimore offices. The picnic was arranged by a committee of employees, with the authorization of the employer's management. In accordance with the usual procedure, the chairman

of the committee. Mr. Berigtold, a supervisor, was chosen by the employees, with the authorization of the employer. All the expenses of the picnic were paid by the employer, but the employees provided their own transportation and no car expenses were allowed for the trip. The picnic was planned for and held at Bay Ridge Beach, on the Chesapeake Bay, near Annapolis, some 30 miles from Baltimore, on Saturday, June 12, 1965.

A contract was signed for the use of the beach facilities between Berigtold and Bay Ridge Beach, Inc., the owner of the beach resort. Details of that contract and the evidence with respect thereto will be discussed hereafter. A poster announcing the picnic was installed in the employer's office where everyone could see it, one or two months before the picnic. Attendance was entirely voluntary, but the employer's manager and assistant manager addressed the employees several times, urging them to come. Those who planned to attend were asked to sign the poster and to indicate the number of persons they were bringing. The number of employees who came to the picnic was 108; with families and friends, the total number was about 250. The employer's Baltimore manager and several supervisors were present.

The cost of the picnic, all of which was paid by the employer, was close to $700. The employer's home office allows $10 a year per employee for the Christmas function and the picnic, all of which is deducted, for income tax purposes, as a business expense.

Sica rode to the picnic with his supervisor, Palmer Shelton, in the latter's automobile. At the picnic, the time was spent in swimming, eating, playing ball, and chatting. Harry Coleman, the manager of one of the employer's Baltimore offices, testified that the picnic is a "renewal friendship type of thing." There was no meeting during the picnic; no business was transacted and no speeches were made.

After the lunch provided by the employer, Sica took part in a ball game, from about three to four o'clock. He and Shelton entered the swimming area at seven-thirty, or a little before. It was their first swim of the day. Daylight savings time was in effect; June 12 was close to the longest day of the year, and it did not get dark until about nine o'clock. Bay Ridge Beach

was open until nine, and the admission ticket which the employer had given Sica and the other employees entitled them to stay until that time. The swimming portion of the resort was a part of the Chesapeake Bay, enclosed by a wire mesh attached to pilings. Sica climbed up on one of the pilings and dived in. The water at the piling was only about five feet deep. Sica struck his head on the bottom, broke his neck, and, as a result of the accident, has become permanently and totally disabled.

In his opinion affirming the Commission's decision disallowing Sica's claim, Judge Foster found that the outing, as far as the employer was concerned, had terminated at six o'clock; this, in the Judge's opinion, was the determining factor. He found, also, that the employer did not derive any substantial direct benefit from the activity. The Judge's second conclusion goes to the question of whether the injury arose "out of" Sica's employment; the first conclusion goes to the question of whether the injury was sustained "in the course of" his employment. Both issues must be found in the employee's favor to bring the claim for compensation within the operation of the statute. "The words 'out of' refer to the cause or origin of the accident, while the phrase 'in the course of' refers to the time, place and circumstances under which it occurs * * * Their meaning and effect, however, depend on the circumstances of each particular case." *Coates v. J. M. Bucheimer Co.*, 242 Md. 198, 201, 218 A. 2d 191 (1966), and cases therein cited.

This Court has often considered the scope of judicial review in Workmen's Compensation cases. "Where the terms and manner of employment are disputed and different inferences may be drawn therefrom, the issue is a mixed question of law and fact, to be determined by the trier of the facts, under proper instructions, but where the essential terms and manner of employment are undisputed, the question is one of law for the court." *Tavel v. Bechtel Corp.*, 242 Md. 299, 303, 219 A. 2d 43 (1966), and cases therein cited. When the question is one of law, the provisions of Maryland Rule 886 (a) that where an action has been tried by the lower court without a jury, the judgment of the lower court will not be set aside on the evidence unless clearly erroneous, does not apply. *Suburban Properties, Inc. v. Rockville Council*, 241 Md. 1, 6, 215 A. 2d 200

(1965) ; *Clayburn v. Soueid, Inc.,* 239 Md. 331, 337-38, 211 A. 2d 728 (1965) ; *Space Aero Products Co. v. Darling Co.,* 238 Md. 93, 106, 208 A. 2d 74, 699, *cert. denied,* 382 U. S. 843 (1965) ; and cases therein cited.

The decision of the Commission is prima facie correct, and the burden of proof is upon the party attacking it. Code (1957) Art. 101, § 56 (c). However, when all that is before the lower court is the transcript of the proceedings before the Commission, as in this case, and the facts are not in dispute, the statutory provision only means that the party attacking the Commission's decision has the burden of persuading the court that the Commission decided incorrectly in construing the law applicable to the facts. *Blake Constr. Co. v. Wells,* 245 Md. 282, 225 A. 2d 857 (1967) ; *Williams Constr. Co. v. Bohlen,* 189 Md. 576, 580, 56 A. 2d 694 (1948).

In determining whether an accident arose out of the employment, the Court "has endeavored to keep in mind both the legislative mandate that the Workmen's Compensation Act shall be so interpreted and construed as to effect its general social purpose and the concomitant consideration that workmen, like other members of the general public, are not insured against the common perils of life." *Tavel, supra,* at 242 Md. 303. During the last decades, the spectrum of the employer-employee relationship has been greatly widened, but the coverage of the Act has not been extended. As in other fields of the law, the problem is to apply the governing legal principles to the particular facts. In the case before us, the enlarged scope of the relationship is one of the facts to be considered.

"The word 'employment' as used in the Workmen's Compensation Act, includes not only the actual physical labor but the whole period of time or sphere of activities." *Watson v. Grimm,* 200 Md. 461, 466, 90 A. 2d 180 (1952). As that case illustrates, an accident may be compensable when it occurred on a trip made for the benefit of the employer as an incident of the employee's duties, even though at the same time the employee was serving some purpose of his own. 200 Md. at 470-71. The modern institution of the "coffee break" benefits the employer, in maintaining the employees' morale, as well as the participating employees. There can be little question but that an accident sus-

tained during such an interval on the portion of the employer's premises set aside for that activity arises out of the employment. 1 *Larson, Workmen's Compensation,* § 21, and cases therein cited. See *Coates, supra* and *Spencer v. Chesapeake Paperboard Co.,* 186 Md. 522, 526-27, 47 A. 2d 385 (1946).

There have been many cases in other jurisdictions as to whether social activities are sufficiently work-related so as to be an incident of employment. We agree with the conclusion of counsel for both the appellant and the appellees in their able arguments, that *Larson, supra,* has accurately analyzed the holdings of those cases in the following statement:

> "§ 22.00 Recreational or social activities are within the course of employment when
>
> (1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
>
> (2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
>
> (3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life."

No useful purpose would be served by citing and discussing all the cases comprehensively set forth in *Larson, supra,* which, on varying factual situations, hold that the social activity during which an employee sustained an accidental injury was or was not sufficiently work-related to be compensable. We find recent opinions of the highest courts in Massachusetts, New York and New Jersey particularly apposite.

*Moore's Case,* 330 Mass. 1, 110 N. E. 2d 764 (1953), involved a claim for compensation of an employee who was injured while attending a Christmas party given by her employer. The party was held at the plant in accordance with the custom of the employer. It was attended only by the employees, with one or two exceptions. All the employees were invited but attendance was optional. No work was done at the factory on

the day of the party and the employees were not paid for that day. The employer paid for the liquor served during the party. The employee was injured when she lost her balance and fell while dancing. The Industrial Accident Board decided that the employee's injury did not arise out of or in the course of her employment. On appeal, the Superior Court affirmed the dismissal of the claim. The Supreme Judicial Court of Massachusetts remanded the case to the Board. Justice Spalding, for the court, said:

"This court, in considering cases involving injuries sustained outside the formal scope of the employee's duties, and courts in other jurisdictions which have passed upon the compensability of injuries sustained during organized recreational activities have evolved a number of criteria which may be resorted to in determining whether the employment and the recreation are related with sufficient closeness to warrant an award. For convenience they may be enumerated as follows: (1) The customary nature of the activity, * * * (2) The employer's encouragement or subsidization of the activity, * * * (3) The extent to which the employer managed or directed the recreational enterprise, * * * (4) The presence of substantial pressure or actual compulsion upon the employee to attend and participate, * * * (5) The fact that the employer expects or receives a benefit from the employees' participation in the activity, whether by way of improved employer-employee relationships, * * * through greater efficiency in the performance of the employees' duties, * * * by utilizing the recreation as partial compensation or additional reward for their work, or for advertising the employer's business, or as an actual adjunct of his business. Apart from the existence of employer compulsion, which often might warrant or even require a finding in favor of the employee, the presence or absence of any one of the other factors listed would not necessarily determine the issue. Nor, indeed, is the foregoing enumeration meant to be exclusive of other factors which might appear in a given case. What is re-

quired in each case is an evaluation of the significance of each factor found to be present in relation to the enterprise as a whole. Upon such an evaluation must the decision as to the closeness of the connection between the employment and the recreation ultimately rest." (Asterisks indicate citations omitted). 330 Mass. at 4-5, 110 N. E. 2d at 766-67.

The case was remanded for further proceedings and more detailed findings in connection with the criteria which the opinion sets forth.[1]

In *Wilson v. General Motors Corp.*, 298 N. Y. 468, 84 N. E. 2d 781 (1949), the employee claiming compensation sustained an injury in a ball game. The employees had organized a softball league; the games were played on the employees' own time in parks in the City of Buffalo, many miles from the employer's plant. The games were in no way connected with the employer and in no manner subject to its control, although the employer acquiesced in and contributed some financial aid to the activity. The New York Court of Appeals, in a four to three decision, held that the injury did not arise out of and in the course of employment.

*Wilson* was distinguished in *Tedesco v. General Elec. Co.*, 305 N. Y. 544, 114 N. E. 2d 33 (1953). In *Tedesco,* the claimant was injured in a softball game conducted by the General Electric Athletic Association (GEAA) on rent-free premises of the employer. The employer gave a large subsidy to the association and had considerable control over it, including the appointment of one board member. The employer was advertised by publicity in the local newspapers and free attendance at the games. It was held that the claimants' injury arose out of and

---

1. In Landry's Case, 346 Mass. 762, 190 N. E. 2d 208 (1963), a one paragraph opinion, the court held that an injury sustained by an employee while dancing at a Christmas party given by her employer, at a hotel where she worked as a waitress and at which attendance was optional, did not arise out of and in the course of her employment. The court stated the case was governed by Moore's Case but the opinion gives no details in respect of the criteria therein set forth.

in the course of employment. Judge Froessel, for the unanimous court, said:

> "There was, it seems to us, more than adequate basis for the board's conclusion that claimant's injury was incurred out of and in the course of his employment. All of the activities of GEAA, which are conducted on the employer's property, are obviously carried out with the sole purpose of providing an integrated plan of recreational activity in which the employer is dominant. However beneficient to the employees such plan may be, its primary motivation is undoubtedly the furtherance of employee relations and the building of an *esprit de corps* and good will which redound to the benefit of the employer." 305 N. Y. at 550, 114 N. E. 2d at 36.

*Ricciardi v. Damar Products Co.,* 45 N. J. 54, 211 A. 2d 347 (1965), in its relevant holding, is almost on all fours with the present case. The petitioner sought an award under the Workmen's Compensation Law by reason of the death of his wife, who was killed in an automobile accident while returning home from a picnic sponsored by her employer. The picnic had been suggested by an employee and the employer thought well of the idea. The employer paid about ninety-eight per cent of the expense of the picnic. Its vice-president testified that the outing was intended to improve relations between employees and employer and among the employees. The picnic was held on a non-working day. No one was required to attend but the employees' committee formed with management's approval urged all employees to attend. The president of the employer spoke at the picnic and awarded some savings bonds for perfect attendance during the first half of the year. The petitioner prevailed before the compensation board, the county court reversed and the Appellate Division affirmed the county court's finding that the accident did not occur in the course of employment. The Supreme Court of New Jersey granted certification and reversed the judgment of the Appellate Division.[2]

---

2. The court also held that while as a general rule an employee is not covered while going to or from his regular place of work,

Weintraub, C. J., in his opinion for the court, said:

> "We think it clear the picnic was sponsored by the employer in part at least to further its own interests. That the employees were free to attend or to stay away is not a critical fact. Nor is it decisive that wages were not paid those who did appear, * * * or that the picnic was held at a place other than the work premises. Rather the question is whether the event is sufficiently work-connected to bring the employees within the coverage of the compensation law, a law which provides protection for employees, not because of fault or failure of the employer, but rather upon the belief that the enterprise itself should absorb losses which inevitably and predictably are an incident of its operations.
>
> "Where, as here, the employer sponsors a recreational event for the purpose of maintaining or improving relations with and among employees, the employees gratify the employer's wish by attending and thus serve the employer's business aim. It therefore is correct to say the Legislature intended the enterprise to bear the risk of injuries incidental to that company event. Hence the picnic itself was a covered affair." (Asterisks indicate citations omitted). 45 N. J. at 59-60. 211 A. 2d 349.

The only differences between the significant facts in *Ricciardi* and the present case is that in the case before us no speeches were made on behalf of the employer at the picnic and no

---

the automobile injury in which the claimant's wife met her death, which occurred on the trip home, came under an exception to the "going to or from" rule because she was on a special errand or mission, because travel to and from the picnic was essential and the event therefore was a special one. Three Justices dissented from the majority opinion but their dissent was expressly limited to the reasons stated in the opinion of the Appellate Division which had held the injury was not compensable on the sole ground that the injuries were sustained while the employee was going to or coming from her regular place of work. 82 N. J. Super. 222, 197 A. 2d 390 (1964).

awards were made. We regard those differences as unsubstantial. In the present case, while no bonds were presented to any employees, honors were given by the employer or acknowledgments made by it (although not at the picnic) to the employees who had made the picnic arrangements. The employer may well have believed that its interests would be better served if the pleasures of the employees at the outing were not interrupted by having to listen to speeches. We find Chief Justice Weintraub's analysis of the benefits to the employer on facts substantially similar to those here presented cogent and apposite.[3]

In the case before us, the annual picnic was an express term of Sica's employment. The employer encouraged and authorized the formation of the picnic committee and its activities, paid all the expenses, and deducted its outlay as a business expense for income tax purposes. The picnic was advertised on the employer's premises, and the employees were urged to attend, although attendance was not compulsory. The nature of the employer's activities was such that its employees, such as Sica, spent a large part of their time "on the street." There were two offices of the employer in Baltimore, and the picnic was given for both offices. It brought together employees who saw each other much less than in the ordinary work of a factory, and the inference is clear from the testimony that the occasion promoted the enthusiasm which was a necessary element in the employer's service business. Each of the five criteria set forth in *Moore's Case, supra,* to some degree at least, was met.

On the undisputed evidence, taken as a whole, we find that the employer derived substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale common to all kinds of recreation and social life.

---

3. Some states have held on varying facts that an injury sustained in a recreational event, such as the picnic here involved, is not compensable under the state statute. See, e.g., Anderson v. Custom Caterers, Inc., 185 So. 2d 383 (Ala. 1966); Lawrence v. American Mut. Liability Ins. Co., 92 R. I. 1, 165 A. 2d 735 (1960); Maeda v. Department of Labor & Indus., 192 Wash. 87, 72 P. 2d 1034 (1937). See also Larson, Workmen's Compensation § 22.23.

With deference to the respected courts so holding, we do not find the reasoning of those decisions, insofar as they may be applicable to the situation presented in the present case, persuasive.

Whether the trial judge's finding to the contrary is to be taken as a determination of a mixed question of fact and law or as a conclusion of law only, we find that he was clearly wrong.[4] We hold that Sica's accidental injury was sustained within the sphere of his employment and arose out of it.

The trial court's conclusion that Sica was not injured in the course of his employment is based upon its finding that, as far as the employer was concerned, the outing terminated at six o'clock. With respect, we are constrained to hold that, in our opinion, on the evidence, this finding also was clearly erroneous.

The contract between Bay Ridge Beach, Inc. and Mr. Berigtold, chairman of the committee, on behalf of the employer, stated that the place of the outing on June 12 was the Casino. The "admission and use of facilities" was from 11 A.M. to 6 P.M. but the subsequent provisions of the contract and the testimony of the manager of Bay Ridge Beach, Inc. make it evident to us that the 6 P.M. reference was to the use of the Casino. Lunch was to be served, clearly at the Casino, from 12 to 2 P.M., and, impliedly, beer and soda could be ordered after that time until 6 P.M. The ball field was reserved from 2 to 5 P.M. There was no time limitation whatsoever in the contract on the use of the beach and swimming facilities. Chairman Doherty, of the Commission, who heard the case for the Commission, found that there was no evidence to dispute the testimony that the employees "didn't have to go out of the park and pay an entrance fee to get back in after 6:00 o'clock, they could go in and stay there, I have no question they were permitted to stay there until closing time of the park, if that is what you are trying to show, I made that determination * * * [T]he company paid for the number of employees that came in to use the facilities of the park until it closed * * * So that actually it follows very logically that the admission, which the employer paid for, permitted the person who was attending the outing to enter from the time the picnic—the facilities opened, and to stay until it closed, I don't think there's any question about

---

4. It is evident, from Judge Foster's opinion, in which he referred to some of the decisions in other jurisdictions, that he did not have the benefit of the Ricciardi opinion in his consideration.

that, it may have been disputed as a matter of offense, but there was no evidence to support otherwise * * * I also recall some of the people went home, some stayed, there was no evidence they had to go out and pay another entrance fee, the only logical conclusion was the entrance ticket they received permitted them to stay until the park closed." He found also that the entrance admission charge to the Beach, paid by the employer, entitled the employees and their invitees to stay until closing time, which was 9 P.M. These findings, as the Commissioner stated, were supported by the uncontradicted evidence.

The poster put on the employer's premises stated that the picnic was to be 11 A.M.-6 P.M.—Bay Ridge Beach Casino Room. This statement was followed by the legend "Swim or bathe in Pool or Bay" without any limitation as to time. The ball field, the poster announced, was reserved from 2 to 5 P.M.

Harry Coleman, the employer's manager, testified that, to his knowledge, no opening or closing time of the picnic was announced to the employees. His understanding was that it was the Casino which was reserved from 11 to 6, but that there was nothing in the contract or in his arrangements with the employees that the swimming facilities could not be used after 6. He testified, further, that no hours were announced at the picnic, and that no one at the picnic told the employees they had to leave at 6. Sica's supervisor, Palmer Shelton, corroborated Coleman's testimony that no hours were announced at the picnic. It was Shelton who was swimming with Sica at 8 o'clock, and who, it may be noted, saved Sica's life. Sica testified that no one told him he had to leave at 6; the grounds were open, "we could stay as long as we wanted." Most of the employees and their families had left by 6, but some remained. None of this testimony was contradicted.

On these undisputed facts, we find that the social activity which the employer sponsored was still in progress at the time of the accident. Unlike the situation presented by the shutting down of a plant, it made no difference to the employer if his employees stayed until Bay Ridge Beach closed. It was only the designated facilities, the Casino and the ball field, which, under the contract, had closing times. The admission tickets, purchased by the employer and given to its employees, entitled

them to use the bathing and swimming facilities until the beach closed at 9 P.M. If, as we have found, the outing was an incident of the employment, the incident continued, without notice or reason to the contrary, for the entire time which the employer had made available. Cases where an employee was injured on the employer's premises before or after the work period and of deviation from the employee's duties are therefore not applicable.

On the undisputed testimony, we find, as conclusions of law, that Sica sustained an accidental injury arising out of and in the course of his employment.

> *Judgment reversed; case remanded to the Workmen's Compensation Commission for further proceedings in accordance with the above opinion; costs to be paid by appellees.*